UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION



FILED-USBC, FLS-MIA
'26 APR 29 PM 1:48

In re:

**RAMIRO ANAYA FERNANDEZ,**

    Debtor.

_____/

CASE NO. 26-10076-RAM
CHAPTER 7

### DEBTOR'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(k) AGAINST AMERICAN HONDA FINANCE CORPORATION d/b/a HONDA FINANCIAL SERVICES

Debtor Ramiro Anaya Fernandez, pro se, respectfully submits this Reply in Support of his Motion for Sanctions [DE#s 26 and 27] (the "Motion") and in response to the Amended Response filed by American Honda Finance Corporation ("Honda") (DE#36). Honda's Response rests on a single legal theory — that the Lease was deemed rejected on March 7, 2026 under 11 U.S.C. § 365(d)(1), and that the automatic stay as to Honda's interest in the Vehicle automatically terminated that same date under § 365(p)(1). That theory is directly contradicted by this Court's own express Order, by documented record evidence of Honda's actual knowledge, and by Honda's own conduct.

### I. THIS COURT'S ORDER OF MARCH 26, 2026 UNDERMINES HONDA'S § 365(p)(1) THEORY

Honda's Response rests entirely on the argument that the automatic stay terminated as to its interest in the Vehicle on March 7, 2026 by operation of 11 U.S.C. § 365(p)(1). That theory is undermined by this Court's own subsequent Order.

On March 26, 2026 — nineteen (19) days after Honda's alleged termination date of March 7 — the Honorable Robert A. Mark entered an Order Setting Filing Deadlines and Hearing by Video Conference on Motion for Sanctions (DE#29). In paragraph 6 of that Order, this Court stated:

**"Unless the Court enters an Order granting Honda stay relief, the automatic stay remains in effect."**

Debtor recognizes that DE#29 is an order setting filing deadlines and a hearing — not a final adjudication on the merits of § 365(p)(1). Even so, this Court's March 26, 2026 Order treated the automatic stay as remaining in effect absent entry of an order granting Honda stay relief. At minimum, that order undermines Honda's contention that it was free to act unilaterally as of March 7, 2026 without any further engagement with this Court. Honda has never sought stay relief under § 362(d), nor has it sought confirmation that the stay had terminated as to its interest in the Vehicle. Instead, Honda proceeded directly with a coercive demand letter to a pro se Debtor.

## II. HONDA HAD ACTUAL DOCUMENTED KNOWLEDGE OF THIS BANKRUPTCY FROM OFFICIAL COURT NOTICE

Honda's knowledge of this bankruptcy is not a matter of inference — it is documented in the official record of this Court. On January 9, 2026, the Bankruptcy Noticing Center ("BNC") issued a Certificate of Mailing (DE#11) confirming that formal notice of the Chapter 7 filing, the Meeting of Creditors, and the automatic stay was served upon all listed creditors, including American Honda Finance Corporation. Honda received this Court's official notice sixty-three (63) days before transmitting its March 13, 2026 collection letter.

The BNC Certificate of Mailing is dispositive on the question of knowledge. Honda cannot argue it was unaware of the filing, unaware of the automatic stay, unaware of the Meeting of Creditors, or unaware of the applicable deadlines. Honda was served by the federal court system itself.

Honda's conduct further confirms this knowledge. The March 13, 2026 letter was sent to Debtor's current bankruptcy address (4225 SW 87th Ave #3, Miami, FL 33165) — not to the prior address reflected in the Lease itself (8401 NW 8th St Apt 407, Miami, FL 33126). Honda's use of Debtor's current bankruptcy address, together with the bankruptcy disclaimer included in the letter and the official BNC notice, supports actual knowledge of the bankruptcy case at the time the letter was sent.

The letter's own bankruptcy disclaimer — 'If you are entitled to the protections of the United States Bankruptcy Code, this communication is not an attempt to collect a debt from you personally in violation of the bankruptcy code but is for informational purposes only' — is an affirmative admission that Honda believed the Bankruptcy Code could apply to Debtor. A creditor that genuinely believed the automatic stay had terminated on March 7 would have no reason to include such a disclaimer on March 13. The disclaimer reflects Honda's awareness that the stay was, or might still be, in effect.

Under controlling Eleventh Circuit authority, a stay violation is 'willful' if the creditor knew of the automatic stay and intentionally took the action that constituted the violation. Jove Engineering, Inc. v. I.R.S., 92 F.3d 1539, 1555 (11th Cir. 1996). The BNC Certificate of Mailing, Honda's use of Debtor's current bankruptcy address, and Honda's own bankruptcy disclaimer together establish knowledge sufficient to satisfy the willfulness standard.

## III. HONDA'S § 365(p)(1) ARGUMENT CANNOT RESCUE ITS CONDUCT

Honda's Response argues that under 11 U.S.C. § 365(d)(1) and § 365(p)(1), the Lease was deemed rejected on March 7, 2026 — sixty days after the petition date — and that the stay as to Honda's interest in the Vehicle automatically terminated that same date. This argument fails for four independent reasons.

First, and most fundamentally, this Court's Order of March 26, 2026 (DE#29) expressly determined that the stay 'remains in effect' as to Honda. That determination was entered nineteen days after the March 7 date Honda now relies upon. If § 365(p)(1) operated automatically to terminate the stay on March 7, this Court's express declaration nineteen days later would be incompatible with that result. This Court's Order controls.

Second, even accepting Honda's § 365(p)(1) theory arguendo, that provision terminates the stay only as to 'the leased property' — that is, Honda's interest in the Vehicle itself. It does not authorize Honda to engage in direct collection activity against Debtor personally for pre-petition monetary amounts. The March 13 letter demanded $5,152.76 consisting of 'Total Payments Due,' 'Total Late Fees,' and 'Other Fees/Expenses' — all pre-petition monetary obligations. Section 365(p)(1) does not lift the broader automatic stay against acts to collect pre-petition debts under § 362(a)(6).

Third, Honda's own conduct is inconsistent with its § 365(p)(1) theory. If Honda truly believed the Lease had been rejected and the stay terminated as to its Vehicle interest on March 7, Honda's proper course was to proceed with repossession under applicable non-bankruptcy law — not to send a 'Notice of Right to Cure Default' demanding payment of pre-petition amounts with a bankruptcy disclaimer. A 'cure notice' is a pre-repossession collection instrument that presupposes

a continuing contractual relationship. By sending it, Honda treated the Lease as continuing and the debt as collectible — contradicting the very position it now asserts.

Fourth, 11 U.S.C. § 365(p)(2) establishes a specific procedure by which a lessor may, after rejection, provide written notice to the debtor regarding assumption of a personal property lease. Honda did not follow that procedure. Instead, it sent a collection demand with a payment deadline and a repossession threat. A creditor that bypasses statutory post-rejection procedures cannot then invoke those same statutes as a shield against sanctions.

## IV. THE LEASE'S OWN TERMS CONTRADICT HONDA'S CHARACTERIZATION OF THE MARCH 13 LETTER

Honda's Response characterizes the March 13, 2026 letter as a neutral communication regarding Honda's 'in rem rights' following an automatic lease rejection. The Lease's own terms — the very document Honda attached as Exhibit A to its Response (DE#36-1) — contradict that characterization.

First, the Lease expressly treats a 'Notice of Right to Cure Default' as a pre-repossession collection instrument, not a neutral informational notice. Item 26 of the Lease (the Arbitration Provision) states that the parties do not waive 'the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover amounts you owe under this Lease.' By Honda's own contractual classification, the March 13 letter — which demanded payment of $5,152.76 and threatened repossession if not paid by March 28 — was a 'self-help remedy' and a pre-repossession collection step. Self-help remedies against property of the estate and acts to collect pre-petition amounts are precisely what 11 U.S.C. § 362(a) prohibits.

Second, the Lease itself expressly identifies the filing of a bankruptcy case as a triggering event that activates special procedures. Item 23 (Default, Repossession and Other Remedies) lists among events of default: 'You start a bankruptcy, receivership, or insolvency proceeding or one is started against you or your property.' Honda, having drafted this very provision, cannot now claim that the filing of this Chapter 7 case somehow escaped its notice or significance. Honda's own form agreement treats bankruptcy filing as a material, monitored event.

Third, the Lease identifies 'Honda Lease Trust' as the Assignee and the actual holder of 'all right, title and interest in the Lease and the Vehicle' (Item 27, Lessor's Assignment). American Honda Finance Corporation appears in the Lease as servicer, not as the record owner of the Vehicle. This distinction is relevant because Honda's Response repeatedly invokes its 'interest in the Vehicle' and its 'in rem rights' to justify the March 13 letter. A servicer acting on behalf of a trust owner must exercise particular care in post-petition communications with a debtor — precisely because it is acting in a representative capacity rather than as the party in interest with direct contractual rights to pursue.

## V. HONDA'S LETTER WAS A COERCIVE COLLECTION DEMAND, NOT A NEUTRAL NOTICE

Honda's March 13, 2026 letter was not a neutral informational notice. It demanded a specific sum ($5,152.76), imposed a firm payment deadline (March 28, 2026), directed where payment should be sent, and threatened repossession if payment was not made. In substance, the letter was a coercive collection demand. Honda did not merely warn Debtor; it threatened to take action that it could not lawfully take without first obtaining relief from this Court.

The combination of a specific dollar amount, a specific payment deadline, the mandatory directive 'you must pay,' the instruction of where to send payment, and the explicit threat of

repossession removes any ambiguity about the purpose of this communication. Under 11 U.S.C. § 362(a)(6), the automatic stay prohibits 'any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case.' A letter containing all five of these coercive elements is, by definition, an act to collect a pre-petition claim.

Honda's argument that the letter was 'informational' fails both factually and legally. Factually, a document that demands $5,152.76 by a date certain under threat of repossession is not informational — it is coercive. Legally, the substance of a communication controls over its self-applied label. A creditor cannot immunize itself from § 362 liability simply by appending an 'informational purposes only' disclaimer to an otherwise unlawful collection demand.

## VI. DEBTOR IS ENTITLED TO ACTUAL DAMAGES, PUNITIVE DAMAGES, AND COSTS

Under 11 U.S.C. § 362(k)(1), an individual injured by a willful violation of the automatic stay 'shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.'

Actual Damages — $25,000. Honda's Response characterizes the damages as 'speculative' because no actual repossession occurred. That characterization misunderstands the nature of the injury. The automatic stay was not abstract protection for this Debtor — it was an active shield against multiple simultaneous threats. At the time Honda transmitted its collection letter, the automatic stay had already halted an active eviction proceeding against Debtor. The stay was the sole legal barrier protecting Debtor's housing stability. A threat to Debtor's vehicle — his primary means of transportation and income through independent contract delivery work — in that context was not merely stressful; it was an attack on the foundation of the fresh start the bankruptcy system is designed to provide.

Debtor is simultaneously engaged in an active child custody dispute (Case No. 2021-006024-FC-04, Miami-Dade Circuit Court) with a hearing that was scheduled for April 15, 2026. The 2024 Honda CRV is Debtor's sole vehicle, used to transport his minor son during timesharing. A credible repossession threat during this critical period directly threatened Debtor's ability to exercise his parental rights. Debtor is also recovering from back surgery and attending regular physical therapy. As a pro se litigant, Debtor expended substantial time — including multiple nights of research and preparation — investigating Honda's violation, researching applicable law, and preparing the Motion for Sanctions. Courts in this circuit consistently hold that emotional distress damages are recoverable under § 362(k) based on a debtor's own testimony. See In re Dawson, 390 F.3d 1139, 1148 (9th Cir. 2004). The totality of Debtor's circumstances supports actual damages of $25,000.

Punitive Damages — $50,000. Debtor seeks $50,000 in punitive damages, representing a 2x multiplier on actual damages. Honda's Response argues that a single notice with a disclaimer cannot support punitive damages. That argument is defeated by the record. Honda did not send 'a single notice' in isolation — Honda sent a collection letter sixty-three days after receiving this Court's official BNC notice, to Debtor's current bankruptcy address, with a bankruptcy disclaimer acknowledging potential Code protection, and chose to bypass this Court entirely rather than seek stay relief. Given Honda's size, sophistication, and documented knowledge of the pending bankruptcy case, a punitive award must be substantial enough to punish the conduct at issue and deter similar future violations.

## CONCLUSION

Honda's defense rises and falls on a single proposition: that the automatic stay as to Honda's interest in the Vehicle self-terminated on March 7, 2026 under § 365(p)(1). This Court's Order of March 26, 2026 (DE#29) treated the automatic stay as remaining in effect absent entry of an order granting Honda stay relief — relief that Honda has never sought. Honda received official BNC notice of this bankruptcy on January 9, 2026. Honda mailed the March 13 letter to Debtor's current bankruptcy address and included a bankruptcy disclaimer acknowledging the potential applicability of the Bankruptcy Code. Honda then demanded payment, imposed a deadline, and threatened repossession — conduct that violated 11 U.S.C. § 362(a) willfully.

WHEREFORE, Debtor Ramiro Anaya Fernandez respectfully requests that this Court:

1. Find that American Honda Finance Corporation d/b/a Honda Financial Services willfully violated the automatic stay imposed by 11 U.S.C. § 362(a);

2. Award Debtor actual damages of $25,000 for emotional distress, disruption, lost time, and harm suffered as a result of Honda's willful violation;

3. Award punitive damages of $50,000 to deter Honda and similarly situated creditors from treating the automatic stay as optional;

4. Award Debtor costs of this proceeding; and

5. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**Ramiro Anaya Fernandez**
Debtor, Pro Se
Tel: (786) 637-8283

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Reply was served on April 29, 2026, via U.S. First-Class Mail and/or CM/ECF electronic notification to:

Gavin N. Stewart, Esq.

Counsel for American Honda Finance Corporation

P.O. Box 5703

Clearwater, FL 33758

bk@stewartlegalgroup.com

Jacqueline Calderin, Trustee

1825 Ponce De Leon Blvd #358

Coral Gables, FL 33134

Office of the US Trustee

51 S.W. 1st Ave., Suite 1204

Miami, FL 33130

_____

Ramiro Anaya Fernandez, Pro Se